# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| CLARENCE PARSLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:11-CV-308 PS |
| | ) |
| SUPERINTENDENT, Westville | ) |
| Correctional Facility, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Officer Peterson of the Pendleton Correctional Facility wrote a conduct report charging inmate Clarence Parsley with committing battery on another person (DE 9-1). In the report, Peterson wrote that:

> Based on the information compiled and contained in Confidential Case File 8-02-11 there is a preponderance of evidence to support Offender Clarence Parsley #136516 to be issued a conduct report for violation of code #102 of the Indiana Department of Correction Adult Disciplinary Procedures in reference to the assault and robbery of Offenders Danny Henley #874831 and Robert Clingerman # 950874.[1] The assault and robbery of Henley and Clingerman occurred February 7, 2008.

(*Id..*)

The disciplinary hearing officer found Parsley guilty and imposed a sentence of one year in disciplinary segregation, a loss of 180 days of earned credit time, and a demotion from class one to class two (DE 9-5).[2] Parsley lost his administrative appeals. (DE 9-6).

---

[1] This inmate's name is spelled as "Clingerman" in the conduct report, but is spelled as "Klingerman" in the report of investigation. Both documents identify this victim's prisoner identification number as # 950874, which indicates that both documents refer to the same inmate.

[2] The Petitioner states in his petition for writ of habeas corpus that there were two hearings (DE 1 at 5), but the only hearing under review before me is the final hearing that resulted in the loss of the Petitioner's earned credit time.

When prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present evidence in their defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 559 (1974). The decision must only be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

In ground one of his petition, Parsley alleges that the conduct report "states that 'there is a preponderance of evidence to support'" the charge that he committed battery, "but nowhere does it state any of the . . . evidence . . . [and] . . . without stating it there is no way for me to defend myself against said evidence" (DE 1 at 4). A copy of the conduct report was given to Parsley on February 22, 2011 (DE 9-1), and he was informed that he was being charged with committing battery on Henley and Klingerman (*Id.*). The hearing was conducted on February 24, 2011 (DE 9-5).

The Fourteenth Amendment's due process clause guarantees prisoners advance written notice of the charges against them. The purpose of the notice requirement is to inform the prisoner of the factual circumstances supporting the charge and "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. The conduct report sufficiently advised Parsley of the charge against him. Parsley argues that he did not have twenty-four hours' notice of all of the evidence against him, but this confuses notice of the charges with notice of the evidence against him. *Wolff* requires the former, but not the latter. Under *Wolff*, a prisoner is entitled to twenty-four hours' notice of the *charges*

2

against him, not twenty-four hours' notice of all of the *evidence* against him. 418 U.S. at 564. Accordingly, Parsley was not deprived of due process.

In ground two of his petition, Parsley asserts that he did not get "a <u>Detailed</u> summary" of the confidential report "24 hours before my hearing to help me in my defense" (DE 1 at 4) (emphasis in original). Parsley does not assert that he did not get any summarization of the report; rather, his claim is that the summary did not contain sufficient detail. Parsley requested the confidential case file summary as evidence, but prison officials did not provide him the case file itself because it was confidential [DE 9-3 at 1].

"Where a prison disciplinary hearing may result in the loss of good time credits," the inmate "must receive . . . an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present document evidence in his defense." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). However, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Parsley was not permitted to review the case file in this case. But for good reason. To allow the review would have revealed the name of the informant who snitched of Parsley, placing that person in great peril. "The government interest in institutional safety and an efficient disciplinary system are especially implicated when inculpatory information is provided by confidential informants because, 'revealing the names of informants . . . could lead to the death or serious injury of some or all of the informants.'" *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985) (*citing McCollum v. Miller*, 695 F.2d 1044, 1048 (7th Cir. 1982)). The Seventh Circuit has noted that "[v]iolent crime directed at other inmates is a common experience

3

in our prisons today, and 'rats' are frequent targets. In the short run revealing the names of informants . . . could lead to the death or serious injury of some or all of the informants; in the long run it would dry up the supply of informants." *McCollum*, 695 F.2d at 1048 (internal citation omitted). However, the government's interest in protecting confidential informants and maintaining prison security must be balanced against the prisoner's interest in a disciplinary hearing that is "[n]ot so lacking in procedural safeguards that they create substantial doubt that these prisoners committed the offenses for which they were disciplined." *Jackson v. Carlson*, 707 F.2d 943, 948 (7th Cir.1983).

What's more, I don't have to just take the prison officials' word on it. An *in camera* review of a confidential report solves the problem. *Mendoza*, 779 F.2d at 1293; *McKinney v. Meese*, 831 F.2d 728, 732 (7th Cir. 1987) (Seventh Circuit examined documents submitted *in camera*, and found that "to reveal their contents or further respond to the petitioner's request would lead to the identity of confidential informants and that the release of this information would endanger lives"). Here, the Respondent has submitted under seal the confidential reports of the investigation of the attacks on Henley and Klingerman [DE 11]. Having reviewed the investigative reports *in camera*, I conclude that providing Parsley with a summary of the confidential witness statements would have seriously risked exposing their identities.

In addition, Parsley argues that the prison violated its own rules by not providing him with a "detailed" summary of the evidence that prison officials found was too dangerous to provide to him, which he claims is required by the prison's Adult Disciplinary Procedures [DE 13 at 2-3; DE 13-1 at 4]. But violations of prison policies do not state a claim for federal habeas relief. *Hester v. McBride*, 966 F.Supp. 765, 774-75 (N.D.Ind. 1997). Challenges to prison policies are questions of state law, "which does not give rise to a federal constitutional question

for which federal habeas relief is appropriate." *Douglas v. Finnan*, 342 Fed. Appx. 198, 199 (7th Cir. 2009); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) (errors of state law may not form the basis of federal habeas relief).

Accordingly, prison officials did not violate Parsley's federally protected due process rights by not providing him with a detailed summary of the confidential witness statements, and the prison's alleged failure to follow its own policies is not a source of federal habeas relief, which is what Parsley seeks here.

In ground three of his petition, the Petitioner asserts that at "the first hearing they did not let me call any witnesses do (sic) to a mistake made by the screening officer" and that "at the rehearing" he was unable to find his witnesses (DE 1 at 5). Parsley concedes that at the first hearing, "at the time of screening I didn't know who my witness was" (DE 13-1 at 8). As to the second hearing, in the screening report, there are no witnesses listed: rather, the report indicated that Parsley "will send list" (DE 13-1 at 9). Parsley states that by the time of the rehearing, "two of my witnesses has been released and the other one I am unable to find out his state known name again do (sic) to the time that has past (sic)" (DE 13 at 5).

Among the basic requirements of due process in a prison disciplinary proceeding is the opportunity for the inmate to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 566. But here, the disciplinary hearing officer did not deny Parsley the right to call witnesses: two of the witnesses had been released from prison, and Parsley was unable to identify the third witness by name. Parsley wasn't denied the right to call witnesses. Instead, it appears that he simply had no witnesses he could locate, which is not a deprivation of due process.

Parsley's argument is essentially that there was an error in his first hearing that prevented

him from calling witnesses (whose names he claims that he provided to the hearing authority at the time of the first hearing), and that the passage of time between the first hearing and the second hearing is what prevented him from being able to call these witnesses, because two were released from prison and he did not know their "state known names" [DE 1 at 5; DE 13 at 4-5]. But even if this issue was resolved in Parsley's favor, he still would not prevail. Where a petitioner fails to provide any indication of how the testimony would aid in his defense, there is no basis for a Court to conclude that the inability to call the witness harmed the petitioner. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003); *see also Jones v. Cross*, 637 F.3d 841, 646-47 (7th Cir. 2011) (any due process violation that resulted from inability to call a witness who had been released from prison, who would have simply corroborated the petitioner's version of events, was harmless). Here, Parsley has provided no indication whatsoever what these witnesses, had they been called, would have said. So even if this issue was resolved in Parsley's favor, under the harmless error analysis that applies to prison disciplinary proceedings, there is no evidence of how Parsley was harmed by the prison's conduct.

In ground four of his petition, Parsley asserts that he was denied "the right to a fair hearing before an impartial decision maker" (DE 1 at 5). In support of this ground, Parsley argues that the deficiencies "in all the grounds 1-3" took "away my right to a fair hearing" (*Id.*). One of the procedural due process rights *Wolff* affords inmates during a disciplinary hearing is the right to be heard before an impartial decision maker. 418 U.S. at 570-71. However, due process requires recusal only where the decision-maker has a direct personal or otherwise substantial involvement in the circumstances underlying the charges against the offender. *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (*citing Rhodes v. Robinson*, 612 F.2d 766, 773 (3rd Cir. 1979)). While the Petitioner claims that the disciplinary hearing officer did

6

not give him a fair hearing, he does not assert that the hearing officer was directly or substantially involved in the circumstances which precipitated the disciplinary charge. Thus, Parsley has failed to establish that he was denied an impartial decisionmaker.

For the foregoing reasons, I DENY this petition for writ of habeas corpus (DE 1).

**SO ORDERED.**

ENTER: December 3, 2012

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT